UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT McCUE,

       Plaintiff,                             Hon. Robert Holmes Bell

v.                                                Case No. 1:12-CV-1139

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age on his alleged disability onset date. (Tr. 145). He successfully completed high school and worked previously as a heifer breeder, driver, milker, and state milk tester. (Tr. 35).

Plaintiff applied for benefits on February 2, 2010, alleging that he had been disabled since January 1, 2008, due to depression, anxiety, back pain, hip pain, colitis, gastroparesis, asthma, left elbow tendinitis, and high blood pressure. (Tr. 145-48, 160). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 73-144). On April 4, 2011, Plaintiff appeared before ALJ K. Kwon with testimony being offered by Plaintiff and vocational expert, Lynda Berkley. (Tr. 42-72). In a written decision dated April 19, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 27-37). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On March 27, 2006, Plaintiff underwent an esophagogastroduodenoscopy examination the results of which revealed the following:

> The duodenal mucosa was normal. The was no evidence of any ulceration of bleeding. The pyloric channel was not deformed. The antrum of the stomach was involved with linear gastritis along with some gastritis in the body of the stomach. The fundus was normal. There was no frank ulceration. There was no bleeding. The GE junction was normal. There was no evidence of esophageal varices. There was no esophagitis and there was no strictures. The entire

length of the esophagus was well visualized and dilated easily. There was no evidence of any stricture.

(Tr. 243). The doctor concluded that Plaintiff was experiencing gastritis.[1] (Tr. 243).

X-rays of Plaintiff's abdomen, taken May 6, 2006, were "negative." (Tr. 252). X-rays of Plaintiff's abdomen, taken July 10, 2006, revealed "no acute process" with "no evidence for a mechanical obstruction" and "no definite abnormal calcification." (Tr. 261).

X-rays of Plaintiff's left forearm, taken April 10, 2007, were "normal." (Tr. 320). X-rays of Plaintiff's left elbow, taken May 27, 2007, were "negative" with no evidence of fracture or dislocation. (Tr. 333). X-rays of Plaintiff's abdomen, taken January 1, 2008, revealed "no significant abnormality." (Tr. 363). On February 1, 2008, Plaintiff participated in an MRI examination of his left elbow the results of which revealed "mild increased signal at the lateral epicondyle," but "no other significant abnormality." (Tr. 380, 383).

On February 6, 2008, Plaintiff was examined by Dr. Andrew Messenger. (Tr. 563-64). Plaintiff stated that he was "here to get refills" of his pain medications. (Tr. 563). Plaintiff reported that he had requested such from a different care provider, but that "she is refusing." (Tr. 563). Dr. Messenger noted that Plaintiff "has a substance abuse problem" and "has stomach complaints but they have never been able to find anything." (Tr. 563). The doctor informed Plaintiff that "he is not going to be getting controlled substances from this office" and that "we are going to refer him to substance abuse." (Tr. 563).

---

[1] Gastritis is a condition marked by "inflammation, irritation, or erosion of the lining of the stomach" which can result from various causes including "excessive alcohol use, chronic vomiting, stress, or the use of certain medications such as aspirin or other anti-inflammatory drugs." *See* What is Gastritis?, available at http://www.webmd.com/digestive-disorders/digestive-diseases-gastritis (last visited on January 15, 2014).

X-rays of Plaintiff's abdomen, taken February 26, 2008, were "negative." (Tr. 397). On February 29, 2008, Plaintiff participated in a CT examination of his abdomen and pelvis the results of which were "negative." (Tr. 406).

On January 2, 2009, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed: (1) mild central disc bulge at the L5-S1 level without evidence of disc herniation or spinal stenosis; (2) disc space narrowing and disc dessication at the L1-L2, L4-L5, and L5-S1 levels, consistent with degenerative changes; and (3) minimal degenerative changes of the facet joints bilaterally at the L4-L5 and L5-S1 levels. (Tr. 528-29).

Treatment notes dated January 29, 2009, indicate that Plaintiff frequently "chops wood" and "works with wood." (Tr. 628). On February 25, 2009, Plaintiff participated in an electrodiagnostic examination of his spine and lower extremities the results of which were "normal." (Tr. 625). On March 15, 2009, Plaintiff participated in an MRI examination of his cervical spine the results of which revealed "degenerative changes." (Tr. 766-67). An MRI examination of Plaintiff's thoracic spine, performed the same day, revealed "mild degenerative changes." (Tr. 768). On June 21, 2009, Plaintiff participated in a CT examination of his abdomen and pelvis the results of which were "negative." (Tr. 789). Treatment notes dated September 30, 2009, indicate that Plaintiff had recently been "cut[ting] a lot of wood." (Tr. 617). These treatment notes also reveal that Plaintiff had recently been instructed to participate in physical therapy, but "did not have it done." (Tr. 617).

On December 7, 2009, Plaintiff was examined by Dr. Messenger. (Tr. 596-97). Plaintiff reported that he was experiencing "a lot of abdominal pain" and "has been to the emergency room a couple times this past weekend" where he received Vicodin. (Tr. 596). The doctor observed

5

that Plaintiff "looks quite miserable," but the results of a physical examination were unremarkable. (Tr. 597). The doctor concluded that Plaintiff "maybe. . .has a withdrawal problem." (Tr. 597).

X-rays of Plaintiff's lumbosacral spine, taken April 11, 2010, revealed: (1) mild degenerative disc disease at the L1-2 level and (2) mild levoscoliosis. (Tr. 674). X-rays of Plaintiff's thoracic spine, taken the same day, were "normal." (Tr. 674).

On April 12, 2010, Plaintiff was examined by Dr. Steve Lasater. (Tr. 672-73). Plaintiff reported that he was experiencing lower back pain which was "exacerbated by yard work." (Tr. 672). Plaintiff reported that he had been taking Vicodin and Percocet. (Tr. 672). A physical examination revealed the following:

> Slow moving male in no acute distress. It looks uncomfortable for him to straighten his back up fully. Gait is normal. Forward flexion at the back is good. Extremities: in lower extremities motor, DTRs and SLR are normal except for a little bit of discomfort felt in the left posterior thigh but at 90° of elevation. No tenderness in the sacrosciatic notches. There is 1+ tenderness diffusely over the lumbosacral area. X-rays of the T-spine were done because of past history of questionable scoliosis and patient wants to make sure he doesn't have that. These appear normal without evidence of abnormal curvature. Also, on physical exam while patient is standing his spine seems to be in good alignment. Also, lumbosacral x-rays today were done and were also unremarkable.

(Tr. 673).

On May 24, 2010, Plaintiff participated in a consultive examination conducted by Dr. Elaine Kountanis. (Tr. 740-43). Plaintiff reported that he was unable to work due to depression, anxiety, multiple bulging discs, back pain, hip pain, colitis, gastroparesis, asthma, tendonitis of the left elbow, hypertension, and hyperlipidemia. (Tr. 740). With respect to Plaintiff's medical history, the doctor observed that "there has never been a diagnosis to explain his GI problems as all testing

6

has been unrevealing." (Tr. 740). The doctor questioned instead whether Plaintiff's "GI problems could be due to the narcotics he is using." (Tr. 740). With respect to Plaintiff's abuse of pain medication, the doctor observed that Plaintiff had recently been given a prescription for Vicodin and that "according to the script which is written...he should have used only 26 tablets including today's dose but he used 38 tablets from the bottle." (Tr. 740).

Straight leg raising was negative bilaterally and Plaintiff exhibited "normal" range of motion in "all areas...including full flexion at the waist to more than 90 degrees to assess him for scoliosis which he did not have." (Tr. 742). Motor testing revealed no evidence of atrophy or muscle spasm. (Tr. 742). Manual muscle testing was normal and Plaintiff exhibited 5/5 grip strength. (Tr. 742). Plaintiff's gait was unremarkable and he was able to step climb, heel and toe walk, and full squat without assistance. (Tr. 742).

On June 15, 2010, Plaintiff reported that "he has been doing well with his medications." (Tr. 871).

On June 20, 2010, Plaintiff participated in a consultive examination conducted by limited license psychologist Leonard McCulloch, MA. (Tr. 842-49). Plaintiff reported that he was disabled due to a variety of ailments. (Tr. 842). Plaintiff reported that on a typical day he cares for his personal needs, works in the garden, washes dishes, sweeps the floor, and performs various chores. (Tr. 845). Plaintiff also reported that "he does the grocery shopping, meal prep, laundry, and dishes on a regular basis." (Tr. 845). The results of a mental status examination were unremarkable. (Tr. 845-47).

McCulloch observed that Plaintiff's ability "to understand, remember and carry out instructions like those of the mental status exam do not appear to be severely impacted." (Tr. 848).

7

McCulloch also observed that Plaintiff's ability "to respond appropriately to others including coworkers and supervisors and adapt to changes in a work setting are not severely impacted from psychopathology." (Tr. 848). McCulloch diagnosed Plaintiff with: (1) depression; (2) anxiety; (3) chronic pain disorder; (4) stress exacerbating physical conditions; and (5) nicotine dependence. (Tr. 848). Plaintiff's GAF score was rated as 60.[2] (Tr. 848).

On July 7, 2010, Plaintiff participated in a CT examination of his abdomen and pelvis the results of which were "essentially negative." (Tr. 869). Treatment notes dated August 3, 2010 indicate that "this is the first time [Plaintiff's] abdominal pain has been under control and it has been with Seroquel[3] 800mg a day making us wonder, of course, about the origin of the abdominal pain." (Tr. 858).

On August 26, 2010, Plaintiff was examined by Dr. Sheila Gendich. (Tr. 1142-44). The doctor observed that Plaintiff "has some physical dependency on the narcotics" and "is really going [to the emergency room] too often." (Tr. 1142). The doctor also noted that Plaintiff was "getting really good control of [his] abdominal pain" since taking Seroquel. (Tr. 1142).

On March 9, 2011, Dr. Gendich completed a form regarding Plaintiff's ability to perform physical activities. (Tr. 1148-51). The doctor reported that Plaintiff can sit, stand, and walk for 30 minutes each without interruption. (Tr. 1148). The doctor further reported, however, that during an 8-hour workday, Plaintiff can - in total - sit, stand, and walk for only 30 minutes each. (Tr.

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

[3] Seroquel is an antipsychotic medication used to treat conditions such as bi-polar disorder and major depressive disorder. *See* Seroquel, available at http://www.drugs.com/seroquel.html (last visited on January 15, 2014).

1148). The doctor also reported that Plaintiff can occasionally lift 10 pounds, but can never lift greater than 10 pounds. (Tr. 1149). The doctor reported that Plaintiff can occasionally bend, twist, squat, kneel, climb stairs, and reach above shoulder level. (Tr. 1150).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national

---

[4]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

9

economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from (1) affective disorder; (2) anxiety-related disorder; and (3) minimal degenerative disc disease of the lumbar spine, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 29-32).

The ALJ next determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he requires a sit-stand option; (2) he is limited to simple, routine, unskilled work; and (3) he should not interact with the general public. (Tr. 32). The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition

or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Lynda Berkley.

The vocational expert testified that there existed approximately 9,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 68-70). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert further testified that if Plaintiff were limited to sedentary work, there still existed approximately 5,200 jobs in the state of Michigan which Plaintiff could perform. (Tr. 68-70). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.   **The ALJ Properly Evaluated the Medical Evidence**

As noted above, Dr. Gendich offered the opinion that Plaintiff experienced far greater physical limitations than recognized by the ALJ in her RFC determination. Specifically, the doctor reported that Plaintiff can sit, stand, and walk for 30 minutes each without interruption. The doctor also reported, however, that during an 8-hour workday, Plaintiff can - in total - sit, stand, and walk for only 30 minutes each. Dr. Gendich reported that Plaintiff can occasionally lift 10 pounds, but can never lift greater than 10 pounds. The doctor also reported that Plaintiff can occasionally bend, twist, squat, kneel, climb stairs, and reach above shoulder level. The ALJ afforded "little weight"

to Dr. Gendich's opinions. Plaintiff asserts that because Dr. Gendich was his treating physician, the ALJ was required to afford controlling weight to her opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and

the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ discounted Dr. Gendich's opinion on several grounds. The ALJ observed that the doctor's opinions were not supported by her own contemporaneous treatment notes. While Plaintiff certainly experiences certain physical limitations, a review of the doctor's treatment notes does not reveal findings that suggest that Plaintiff is impaired to the extent alleged. (Tr. 1096-1146). The ALJ also accurately observed that Dr. Gendich's opinion is contradicted by substantial evidence as detailed above. Finally, the ALJ noted that Dr. Gendich's opinion is inconsistent with Plaintiff's testimony at the administrative hearing and other reported activities. For example, Plaintiff testified

13

that he can sit for two hours, stand for one hour, and can lift 20-30 pounds. (Tr. 56-57). Moreover, as noted above, the record reveals that Plaintiff chops wood and performs other yard work.

In response, Plaintiff repeatedly asserts that he suffers from "real medical problems." The question, however, is not whether Plaintiff suffers from "real medical problems," but instead whether the ALJ properly discounted Dr. Gendich's opinion. As discussed above, the ALJ's decision to discount the doctor's opinion is supported by substantial evidence.

In a related argument, Plaintiff asserts that the ALJ failed to adequately explain why he "ignores" the results of a one-time consultive examination conducted by Leonard McCulloch. This argument strikes the Court as odd considering that McCullough's opinions and observations, as detailed above, are consistent with the ALJ's RFC determination. Moreover, the ALJ did not ignore McCullough's opinion, but instead accorded it "great weight" because it is "consistent with and supported by the record as a whole." (Tr. 34). This argument is, therefore, rejected.

**II.       The ALJ Properly Evaluated Plaintiff's Impairments**

Plaintiff next asserts that he is entitled to relief because the ALJ failed to find that his gastrointenstinal difficulties constituted a severe impairment. At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Commissioner of Social*

*Security*, 528 Fed. Appx. 425, 427 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error"); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (same); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the medical evidence of record. The record does not support the contention that Plaintiff's gastrointestinal impairments impose on Plaintiff any limitations which are inconsistent with his RFC. As previously noted, Plaintiff's care providers consistently failed to find any discernable cause for Plaintiff's gastrointestinal complaints. Moreover, when Plaintiff's gastrointestinal pain was well controlled through the use of anti-depressant medication, Plaintiff's care providers further called into question Plaintiff's gastrointestinal complaints. Thus, even if it is assumed that the ALJ erred in failing to find that Plaintiff's gastrointestinal complaints constituted a severe impairment, such does not call into question the substantiality of the evidence supporting the ALJ's decision. This argument is, therefore, rejected. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further

consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 24, 2014   /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge